Good morning, Your Honors, and may it please the Court, my name is Cynthia Lee and I'm representing the appellant, Mr. Guerrero-Jasso, in this case. At sentencing, the district court committed a prende error by treating the defendant's generic guilty plea to the bare elements of 1326, namely that he was an alien who had reentered and was found in the United States following a prior deportation or removal, by treating that as a tacit admission of specific dates of removal that, though alleged in the charging document, were not expressly admitted in the Rule 11 plea colloquy. This Court, in an unbroken series of decisions from United States v. Covina and Sandoval to United States v. Zepeda Martinez to Salazar Lopez to the unpublished decision in United States v. Covina, found that reliance upon a generic guilty plea and reliance upon a date of removal that is not expressly admitted by the defendant in his plea or found true by a jury beyond a reasonable doubt at trial constitutes a violation of Apprendi's Sixth Amendment mandate. It wasn't quite just a generic guilty plea. Well, I would submit that it was. The prosecutor did. When the judge was going, advising the defendant about what was going to happen, he said to the defendant, the prosecutor will inform you, will lay out the charge and put a proffer of what they would prove. Your Honor, he did. And the government, he did that. The attorney did that and said, referenced the particular dates, and then the only error was that the judge didn't say, do you agree with the factual proffer made by the U.S. attorney? I agree that if the Court was an oversight. I agree that if the Court or the government had required of Mr. Guerrero-Jasso at that point a specific and explicit admission of the removal dates that were alleged in the indictment and that were proffered by the government in the course of the Rule 11 hearing, then we would not be in this situation. There would have been no Apprendi error and there would have been no error in the Court's decision to sentence Mr. Guerrero-Jasso. The government seems to agree that there was Apprendi here, so really isn't the real question simply what do we do? Was it harmless? So I agree, so to the extent that the issue is whether the government has met its burden of demonstrating that the constitutional error in this case was harmless beyond a reasonable doubt, I would distinguish the cases of Zepeda-Martinez and Salazar-Lopez on their facts. Zepeda-Martinez and Salazar-Lopez, this Court in those cases, spoke of finding harmlessness where the evidence of the specific removal date is overwhelming and on contrary. Kagan. It seems to me that there's something sort of peculiar, and I wonder whether it's undermined by DeCamp, about proving harmlessness when there's no trial by introducing evidence that's extraneous to the plea event. I mean, that's essentially what happened here. After they realized they had a problem, they came in with some documents, which is usually what you do in trial. You don't do it in a guilty plea situation, because he has a right to a trial about facts, if facts are the issue. So how does this happen? I don't really understand it. Well, Your Honor, in the sentencing proceeding, I did object to the introduction of extraneous evidence. I think that the – I know there are a couple cases where this happened, but I'm wondering whether those cases aren't sort of from an era that was less purist about the apprenti error, not spilling over into facts for any purpose, including for harmless error. I mean, why can you have facts for harmless error if you can't have facts for any other purpose? Well, I think that the district court attempted to address this below by essentially refusing to consider the evidence that was submitted. And I know that, but that doesn't help now for us. I mean, he said, I'm just going to make a ruling on the merits, and that makes perfect sense, but there – the argument still is, well, we should look at these documents to decide whether there was harmless error on review or not. Because if the district court was wrong about his – his judgment, then do we even look at these documents? I understand you have issues with the documents, and I want to hear about them, but why are we even looking at them? Well, I would agree, Your Honor. I think that – that ideologically and consistent with the very clear line that's drawn in Apprendi and in Jordan as well, relating to the types of evidence that can be considered and the nature of the court's inquiry on what was admitted, what was either admitted by the defendant prior to the entry of the plea or what was admitted before a jury prior to a verdict is where the court's inquiry should properly be focused. I would concede, however, that this Court has decided in Cepeda-Martinez and Salazar-Lopez to look at information that is produced elsewhere to the extent that the – What did it do with the – with the pre-sentence report and the fact that the probation officer delineated these prior removal dates, and there really was no objection to those factual statements? Well, I would disagree. What got it into this? Well, so first of all, I would disagree with the Court's assertion that there was no objection. There were objections that were made to the draft pre-sentence report. The fact that the probation officer considered those objections to have been resolved by the time of the final report, I think, doesn't – But when I read your sentencing memorandum, though, it didn't specifically object to the – to those particular paragraphs. It is true that my sentencing memorandum did not specifically take issue with the factual findings in the probation report, but simply dealt with the antecedent or anterior legal question of whether any information that is presented to the Court, consistent with Judge Berzon's concerns, is properly before the Court at that point. In Salazar-Lopez, in United States v. Jordan, this Court has been clear that the Court must look first to the issue of whether there is a Prendier, the question of whether there is harmlessness. Both Salazar-Lopez and the Court in Jordan speak to the pre-sentence report question is really a question of what it takes to admit something. In other words, this was in the pre-sentence report, and if the rule is you've accepted it unless you've – unless you specifically object to it, then one could say that it was accepted, at least by the point of the sentencing, and so it could be the basis for the sentencing. So why not? Well, I think even in Salazar-Lopez, the Court acknowledges that admissions that are made in the context of sentencing, if you can even construe this as an admission, that admissions made in the course of sentencing don't resolve the anterior question of whether there was a Prendier in the first instance. So Apprendi looks to whether there was an admission in the course of the plea colloquy or whether there was a finding by the jury for Sixth Amendment purposes. I think the boundaries between the finding of constitutional error on the one hand and the issue of whether that error can be proven by the government to be harmless beyond a reasonable doubt are starting to meld at this particular point. So let me treat the issue of harmlessness separately and the issue of whether there was, in fact, any controversy regarding any evidence produced by the government inconsistent with the harmlessness inquiry as it's been laid out by the Court in Zepeda-Martinez and Salazar-Lopez. And the Court first has to look to what evidence was, in fact, deduced by the government. And the issue here is that there was no competent evidence linking Mr. Guerrero linking the documents that were belatedly produced by the government to a removal by Mr. of Mr. Guerrero-Josso by immigration. In contradistinction to Zepeda-Martinez and Salazar-Lopez, where there was a complete warrant of removal in both of those instances documenting not only the physical removal of the defendant, but also the fact of the removal order, the authority for that removal, the directive by the immigration judge to the officers of Immigration and Customs Enforcement to execute this order and the statutory bases for that. There was also, furthermore, no basis for contesting the authenticity of that document. In Zepeda-Martinez, the defendant himself had proffered one page of that document in his own pretrial pleadings, and in Salazar-Lopez, there had been. Sotomayor, is wrong with this. I mean, what we're trying to prove, if this was admissible, if this was relevant at all, and it's supposed to be proving that he was removed as of a certain date by INS, it doesn't add up. It says he was removed, it says the date, it says it was by an immigration officer, signed by an immigration officer, it's signed by him. Why isn't that good enough? Well, I think the analogy is to a search warrant versus a search warrant return. What you have is the proof of execution, the proof of a physical removal. That's the relevant question, isn't it? Was he removed to Mexico? I think it's relevant to the question, but it's not dispositive of the question, because the removal contemplates not only the lawfulness of the order, but also the execution of that order. And what you have in Zepeda-Martinez and Salazar-Lopez. I thought this is the execution. I'm sorry? I thought what they gave you is the execution. What they have to do is the other way around, you'd have a bigger, you'd have a better argument, but this demonstrates that he was removed to Mexico. What it demonstrates is that he was physically removed from the country. What it does not demonstrate is the fact of a valid removal order or the statutory basis, the directive that makes this anything other than an ultra-virus action by the executive, essentially. Okay. Did you want to say the rebuttal? I'll save the last 30 seconds for rebuttal. Thank you. Oh, I'm sorry. You exceeded your time. I was misreading the question. You're from the government? Good morning, Your Honors. My name is Ann Voights, and I represent the government in this case. The district court did not commit a prende error here because it concluded that based on the entire plea colloquy, the requisite facts had been admitted in the guilty plea. Even if, however, that was error on the part of the district court, the error was plainly harmless in light of the evidence in the record, which included the warrants of deportation, which – Well, first of all, are you essentially conceding that there was a prende error? We're conceding that the information improperly pled three dates of – So that pleading to it was not a pleading to any one of the three dates. Correct. Under Young v. Holder – So then you would say that it still wasn't a prende error because – Because in this case the government did proffer the specific dates and defendant did not object to them. And then – But that wasn't the ground on which the district court relied. No, I believe the district court looked at the entirety of the plea colloquy, the fact that defendant admitted to the 20-year statutory maximum, which would only apply if, in fact, he had committed an aggravated felony and subsequently been removed. And then the fact that defendant – the government had made this proffer to which there had been no objection. And then – So if we go to the harmlessness, can you explain – answer the question I asked before? I mean, how does one introduce evidence as to harmlessness when ordinarily if you're – the whole point of a prende is that evidence is supposed to be determined by a jury. If it's evidence and there's no admission. So how can you go walking in with something you're calling evidence and say, well, this is proving something even though – even if it's going to the harmlessness rather than to the merits, you're still trying to prove something with it. And why doesn't it have to go to a jury? Well, I think that's – You see, in the ordinary harmless error situation, it's in the record before the jury. And what you're trying to determine is what the jury probably did or would have done with that evidence before the jury. But here, there is no jury and there was no introduction. There was no chance to cross-examine it. There was no – and you're just walking in with this and asking us to look at it. And so you're asking us to look at evidence, which we can't do in the prende context. Well, as defense counsel has conceded, that is something that this Court has ruled is permissible. I understand that, but I want to know why it makes any sense, especially after de camp. The purpose, I think, is because Nieder says that if something is uncontested by the jury, there is a chance that the jury would have a chance to cross-examine it. And certainly in sentencing, they had the opportunity to contest it. They – and they did not. All of the objections to – Well, they objected to the documents, however. They objected, but those objections – They would have had a chance to try it before a jury. They objected, but if I might note, those objections were largely pro forma. They claimed that they were not sufficiently authenticated. They disputed the completeness – But in determining whether it's harmless, this Court has said that you can look at the entire record, including the record of sentencing. I'm asking you how that rule comports with – and de camp, for example, in explaining why they weren't adopting a factual – allowing any factual approach. One of the facts they said that would have otherwise have to be proven was how these documents were treated in the trial. In other words, not what the underlying crime was, but what happened back at the time of the original conviction that demonstrated why certain documents came out the way they did. Right? That was a fact. So this is a fact. And I don't understand how you get to use it. I think, as this Court observed in U.S. v. Hunt, they did consider in determining harmless – that in that case, they couldn't find the error harmless. They expressly distinguished intent and – which they thought was subject to more easily disputed and more difficult to prove with what they considered the much more easy question of proof when we're talking about the date of a prior removal, which in this case, in, for example, as a – But we know that the date of a prior removal is subject to a printing. Right? Correct. All right. So how can you come in and prove it as part of harmlessness if you can't prove it as part of your – on the merits? Because I believe that we can and have proved it on the merits by both the defendant's failure at no point in the proceedings either, the guilty plea colloquy through the PSR. All right. So you're saying we should just ignore these documents. Don't even look at the documents. The record – before you get to the documents, the record is sufficient. We think it's sufficient. But certainly when you add in the documents, which are permissibly before this Court under this Court's case law, for example, in Zepeda-Martinez. So explain – so explain, without these documents, why is the record sufficient to establish the sequence of the conviction and the prior removal that's – Certainly. – precedes the conviction that – is it? The removal has to come after the conviction. Correct. And in this case, what happened was both in the proffer that the government made at the plea colloquy and in the PSR, under Rule 32, the district court is entitled to rely on statements that are not objected to. And this Court has repeatedly drawn a distinction between – In the plea colloquy? No. I was referring to the statement to the failure to object to the PSR's specific listing of all three cases. No. No. That is a separate issue. And again, I think that adds to the – to what this Court can consider. But we would also suggest that when you look at the evidence in the PSR, the PSR listed all three of the removal dates. There was no objection to them. And with respect to the question of whether the removal was not valid, we note that the defense never brought a motion pre-tile to challenge the validity. Wait a minute. You're sort of slurring things together again. I thought we were proceeding on the basis of trying to tell us why it wasn't really error. The PSR would go to harmlessness again. Correct. And I apologize. I believe I was addressing the – We're back to the harmlessness thing when you say, well, because of the PSR. That's just part of harmlessness. We made that clear in our prior cases. Correct. And I apologize. I believe that I was addressing the question of the harmlessness, not the issue of whether there was an error. Maybe I missed – maybe we're not communicating here. I don't know. My question was, without considering harmlessness, just the documents that you came in with afterwards or Judge Fernandez's pre-sentence report, what is it about the record that you can point to that says it establishes the sequence of events? It is – What would we say if we were going to agree with you? If you're going to agree that there is no error, it is that the defendant pled to the information which cited both 1326A and B and which included the dates of removal and that he did not object to the proffer. I apologize. You're really sliding around. You specifically said that that is not of any use. Independently, no, but combined with the failure to object to the proffer. But, again, if the Court disagrees with us on whether there is error or not, we believe that certainly on the issue of harmlessness that the record – So then there's this question of the PSR as proving harmlessness because of the rule that says that you – the judge can rely on it. But does that mean that he can rely on it in the face of apprendee as opposed to he can rely on it, for example, for guideline sentencing when guideline sentencing is not subject to apprendee? Well, this Court – the Fifth Circuit has held that one can. However, here this Court isn't asked to rely simply on the PSR. And there's the fact that defendant has never objected at any time to the actual validity. He has never said, I was not, in fact, removed on that date. He never said he was either. I apologize, Your Honor. But he never said he was. No. He – but he's consistently failed to object to the PSR, which is under Rule 32 effectively an implicit – That's why I asked you the question of whether that rule applies to trump apprendee as opposed to to apply when apprendee doesn't apply, i.e., in most of the instances in guideline sentencing. I think this Court hasn't ruled on that issue. The case that we cited comes from the Fifth Circuit, which is Ramirez, which held that in certain circumstances it could. But here this Court isn't asked to just consider the PSR. The court also has the warrants of removal in front of it, which included the dates, the signature of the official, defendant's photograph and his fingerprint, the place of removal as well. And to the extent that the first page was not there, that again relates to a challenge that defendant has never made at any point until oral argument, which is a question of the validity of the removal. That was not made in a pretrial motion, nor was it reserved in the guilty plea as part of a conditional plea. And so any challenge to the validity is waived. So on your theory, then, if there was no – if he hadn't admitted in the plea colloquium, you know, there's a murder charge, and he didn't admit that he had premeditation, you could come in at the sentencing stage with documents, depositions, a confession, for example, and just bring it in at the sentencing stage and say, look, he really did. So it's harmless. I believe that that is part of the Nieder analysis, and that if you look at Nieder and if you look at the Supreme Court's rulings. It's eliminated Apprendi at that point? No, I think that still is a question of whether there is Apprendi error, and then the question is whether there's harmlessness. And that can be, depending on the circumstances, for example, in Hunt, this Court found that we had not met the burden of showing that it was harmless. By contrast, this is a much simpler issue. I see that I'm almost out of time. Yes. If the Court has no further questions. You're over by 28 seconds. Thank you very much. We appreciate the arguments on both sides of the matter. It is submitted at this time.
judges: Fernandez, Paez, Berzon